GRAND LODGE COLORED KNIGHTS OF PYTHIAS OF NORTH AND SOUTH AMERICA, EUROPE, ASIA, AFRICA, AUSTRALIA AND OCEANICA *v.* EDWARD SMITH, ET AL.

[42 South. Rep., 89.]

INSURANCE. *Marriage. Duress. Widow.*

> A woman is not the widow of a decedent, within the terms of an insurance certificate payable to insured's "widow or other heirs," where the insured was coerced into marrying her and never thereafter cohabited with or visited her, but always repudiated the pretended marriage.

FROM the chancery court of Warren county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

Edward and Thomas Smith, appellees, were complainants in the court below; the Grand Lodge Colored Knights of Pythias of North and South America, Europe, Asia, Africa, Australia and Oceanica and one Mary Richardson, appellants, were defendants there. From a decree in favor of complainants the grand lodge appealed to the supreme court.

The appellees, brothers and heirs of Chester Smith, filed their bill of complaint against the appellant lodge and Mrs. Richardson, alleging the facts set forth in the opinion. Process was duly executed upon the defendants, and upon their failure to appear a *pro confesso* was taken against each defendant and thereupon a final decree was rendered in favor of complainants.

*L. J. Winston,* for appellant.

This was a bill filed by Edward and Thomas Smith, brothers of Chester Smith, deceased, against Mrs. Richardson, wife of Chester Smith, and against the appellant grand lodge, in which appellees sought to annul the marriage between Chester Smith and Mrs. Richardson, because it was alleged to have been made under duress; and, further, to secure decree against

the appellant lodge on a policy of insurance issued by the lodge to Chester Smith in which the widow was named as beneficiary, the exact words of the policy being: "To the widow or other heirs of Brother Knight Chester Smith."

From a final decree predicated of a *pro confesso* against Mrs. Richardson and the lodge, the lodge appealed to this court.

A petition to annul a marriage procured by duress can only be brought by one of the parties to the marriage, because it is *voidable* only, and not *void*. The courts will disturb marriage relations only upon the application of the parties thereto; the jurisdiction to annul marriages being similar to that to grant divorces. Hence, the court in this case had no jurisdiction, under the facts alleged in the bill of complaint, and the court below erred in rendering a decree against the lodge requiring it to pay to appellees the amount named in the insurance policy, which was, under the terms of the policy, payable to the widow of the insured. 13 Ency. Pl. & Pr., 871, 872, note 1. The law presumes the validity of a marriage. *Powell* v. *Powell,* 27 Miss., 785; *Ward* v. *Ward,* 23 Miss., 410.

*Bryson & Dabney,* for appellees.

This record presents a mixed question of law and fact, and since an answer was not filed by either of the defendants to the bill of complaint, and decree *pro confesso* was taken against each of the defendants, the averments of the bill must be accepted as a correct statement of the facts. If these averments show a legal marriage, the decree of the court below must be reversed. If, on the other hand, the averments do not show a legal marriage, then the decree was correct, and the cause must be affirmed.

Counsel for the appellant lodge begs the question involved in his argument. He states that it is a fact that Mrs. Richardson was the wife of Chester Smith, which, of course, presupposes a valid marriage, and as a minor premise he states that

the marriage was "voidable, not void." He then draws the conclusion that the marriage cannot be attacked collaterally. We do not deny the proposition that a voidable marriage cannot be attacked collaterally, but we do say that, under the facts in this case, the alleged marriage of Chester Smith and Mrs. Richardson was and is void absolutely.

We have found a few cases which seem to hold that a marriage under duress is voidable merely, but such cases uniformly disclose a state of facts which, *prima facie,* indicate consent to marry. We think the true rule to be deduced from the many cases in the authorities is, that where all the facts surrounding and following the marriage ceremony indicate, *prima facie,* consent of the parties, then the marriage is voidable merely; but where they fail to show consent, the marriage must be held absolutely void.

Note the facts alleged in the bill of complaint: It alleges that the marriage was pretended; that Chester Smith was coerced into the marriage; that it was a fraud upon him; was illegal and void. To quote from the bill, "the defendant, Mrs. Richardson, applied to the chief of police of the city of Vicksburg, stating that she was in love with the said Smith; that he had promised to marry her, and had neglected to do so, and that she desired to have him arrested and punished for his dereliction in that regard; and thereupon the chief of police, with his subordinates, entered into a conspiracy with the said defendant, Mrs. Richardson, to coerce the said Smith to marry her. And in pursuance thereof the said Smith was arrested, without warrant or affidavit, by the chief of police, detained in the office of the chief of police, and finally told that if he would marry Mrs. Richardson he would be discharged from custody. The said Smith, being frightened, coerced, and knowing no other way of securing his liberty, consented. Thereupon, one of the city police, armed with a pistol and a policeman's club, accompanied the said Smith to the office of the circuit clerk

of Warren county for a marriage license, and, after the license
was secured, one Henderson, a justice of the peace, was sent
for, and on his arrival was rquested by some one of the police
to unite in marriage the said Smith and the said Mrs. Rich-
ardson. And the said Smith, being under duress and in great
fear lest he should be deprived indefinitely of his liberty, stood
up with the said defendant, Mrs. Richardson, while the said
Henderson read to them the marriage ceremony. Thereafter
the said Smith was released, and returned to. the service of his
employer in Vicksburg. He never at any time thereafter co-
habited with the defendant, Mrs. Richardson, and never vis-
ited her house. From the date of the pretended marriage to the
date of his death he never at any time treated or recognized
the said marriage ceremony as binding upon him, but at all
times denied that he was legally married to the said defendant,
or that she was his lawful wife."

The case of *Ferlat* v. *Gojon,* 1 Hopkins Chancery (N. Y.),
478 (14 Am. Dec., 554), presents a case of facts similar to
the above. Miss Ferlat had entered a carriage with Gojon,
thinking he was going to take her to her home. She was instead
taken to the house of a former music master, where a minister
in robes was in waiting. In her bewilderment she was per-
suaded to go through with the ceremony of marriage to escape
violence. She never considered herself the wife of Gojon at
any time thereafter, nor did she ever live with him. The court
held the pretended marriage to be based upon fraud, and abso-
lutely void.

The case of *Fornshill* v. *Murray,* 1 Bland Chancery, 479 (18
Am. Dec., 344), a Maryland case, is likewise in point, not
only on the question of the marriage being void, but also on
the question of attacking the same collaterally. This was a bill
for an accounting against an administrator of the estate of one
Somerville, and the parties to the same were the brothers of
the decedent and two children of a sister of the decedent. The

89 Miss.—46.

sister's children claimed their mother's share in her brother's estate. This right was contested by one of the brothers on the ground that the children were illegitimate and could not inherit. It appeared that the sister had married in Ireland, but later had left her husband there and had moved to America, where, during the lifetime of her first husband, she married twice, her second husband dying before her third marriage. The two children claimed that their mother's second and third marriages, of which the two children were the issue, could not be attacked collaterally after her death. The court, however, refused to so hold, and decided that the issue of the sister by her second and third marriages, which marriages were void, could not secure relief under the circumstances, and the court would decide upon the question of illegitimacy. And, as laying down the same legal conclusion see *Mountholly* v. *Andover,* 11 Vt., 226 (34 Am. Dec., 685); *Shoro* v. *Shoro,* 60 Vt., 392 (6 Am. St. Rep., 120); *Cartwright* v. *McGowen,* 121 Ill., 388 (2 Am. St. Rep., 105).

So notorious were all the facts in this case that no answer was filed to the bill of appellees by the pretended widow of Chester Smith or by the grand lodge. Certainly consent cannot be predicated of the negative action of Chester Smith prior to his release from custody, and equally certain it is that much weight should be given to his notorious repudiation of the fraudulent marriage thereafter.

To give effect to the marriage ceremony performed in this case validates a marriage to which one of the parties never consented, and into which he was tricked and coerced by a fraudulent conspiracy between the other party and the officers of the law acting in open and notorious violation of their official duties. If this be held a valid marriage it must establish property rights without any equitable basis, and will cloud the good name of a man with a marriage relation which from

the time of the ceremony to his death was always repudiated
by him.

CALHOON, J., delivered the opinion of the court.

The appellant lodge in 1903 insured the life of Chester
Smith for $400, payable to "his widow or other heirs." He
died, and his heirs claim the money in a bill against the lodge
and one Mrs. Richardson. It is shown that there was a pre-
tended marriage between Chester and Mrs. Richardson in 1904,
but that was in fact no marriage at all, because he was forced
into it, and that every movement at it and preceding it was
under the coercion of pistols and bludgeons, and that imme-
diately at the conclusion of the pretended ceremony he went
away from her, has never cohabited with her, nor even visited
her. The decree below, in effect, was that the marriage was
void, in so far as it concerned this money claim and that the
lodge pay the petitioning heirs. Mrs. Richardson was duly
made a party defendant to the proceeding, but does not appeal;
the lodge being the only appellant.

We agree with the chancellor that it must pay the heirs to the
exclusion of Mrs. Richardson. The marriage was void, so far
as this money claim in controversy goes, and payment to ap-
pellees is fully protected as against Mrs. Richardson. This
conclusion does not touch the question of the course of the
courts if there had been consummation of the coerced mar-
riage, nor do any of the decisions apply that refer to collateral
attacks on a marriage.

*Affirmed.*